formed.    The question as to whether such was the understanding between the parties, or whether there was a completed oral agreement which was performed by the defendant, was a question of fact, which has been decided by the court below in favor of the defendant; and as before stated, as there was evidence to sustain such a finding, we would not be justified in interfering with it.    It was not against the weight of evidence.    The defendant's contention is sustained by the execution and delivery by him of the bill of sale and the bond and mortgage, and its acceptance and retention by the plaintiff.    The counterclaim is based upon a violation of a contract, not upon a tort.    But for the contract, the plaintiff or his assignor would have had the right to proceed and sell the defendant's property.    The wrong alleged consisted of proceeding to have the defendant's property sold after an agreement to discontinue the action and release the property from the discharge of the lien obtained under the attachment.    The counterclaim was therefore based upon a breach of the contract made by the plaintiff's assignor with the defendant.

The allegation of a forced sale of the property in New Jersey for an inadequate price was necessary to show the damage caused by that breach of the contract made by the plaintiff's assignor, and does not change the nature of the cause of action upon which the counterclaim was based.    Nor was this defendant bound to go to the state of New Jersey, and move in the New Jersey action.    He had a right to rely upon the engagement of the plaintiff's assignor to discontinue the action, and to hold the corporation liable for a breach of that contract. The exceptions taken upon the trial do not appear to be relied upon by the plaintiff, and do not require notice.

I think the judgment was right, and should be affirmed, with costs. All concur.

---

NEW YORK CITY & W. RY. CO. v. PORTCHESTER ST. RY. CO.

(Supreme Court, Appellate Division, First Department.    December 10, 1897.)

INJUNCTION—RESTRAINING CONSTRUCTION OF RAILROAD.
    Upon an application by the plaintiff for a preliminary injunction to restrain defendant from constructing its road, it appeared that by the terms of the plaintiff's incorporation in 1887 it was required during the following five years to expend 5 per cent. of its capital stock of $200,000, and, in case of failure, its charter was to become void.    Its proofs of having complied with this requirement were indefinite and inconclusive.    *Held*, that the discretion of the court below was correctly exercised in refusing the preliminary injunction.

Appeal from special term.

Action by the New York City & Westchester Railway Company against the Portchester Street-Railway Company.    From an order denying a preliminary injunction, plaintiff appeals.    Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, and INGRAHAM, JJ.

Charles Lock Easton, for appellant.
Frederick W. Sherman, for respondent.
    48 N.Y.S.—21

INGRAHAM, J. The plaintiff applied for a preliminary injunction pending the trial of the action to restrain the defendant from proceeding to construct its roads in the county of Westchester. The right of the plaintiff, and the fact of its existence as a corporation, are challenged by the defendant. That right depends upon the expenditure by the plaintiff of 10 per cent. of the amount of its capital stock within five years after its articles of incorporation were recorded in the office of the secretary of state. The plaintiff was incorporated April 18, 1887. It was required to expend an amount equal to at least 5 per cent. of its capital stock before April 18, 1892, and, in the event of a failure to comply with this condition, its corporate existence and powers ceased. The plaintiff's capital is $200,000, and the evidence of its compliance with this provision of the statute is most indefinite. Mr. Bergholz, who describes himself as the chief engineer of the railroad company, swears that, beginning in the month of June, 1887, he began the work of constructing the railroad of the plaintiff company, and that between June, 1887, and September, 1890, deponent, with two assistant engineers, was engaged in relocating, resurveying, and cross-sectioning the entire line of the railroad. He also swears that he caused to be employed foremen and laborers during said period upon the work of clearing and repairing the roadbed and culverts which had been formerly constructed by the New York, Westchester & Boston Railway Company. The assistant engineers were engaged in such work of construction in and during the years 1887 to 1890, inclusive, and during that time employed laborers upon those portions of the line of railway "marked in blue upon the annexed map, and during that period the plaintiff company expended in such work of construction, etc., on vouchers certified and paid by deponent upon its authority and on its behalf, the sum of twenty-seven thousand and five hundred and sixteen dollars and forty cents." He further swears that, as one of the stockholders of the plaintiff company, he was personally interested in procuring subscriptions to the capital stock; and such subscriptions are stated to be the 10 per cent. paid by the incorporators, two subscriptions by Bergholz amounting to $6,554.53, money advanced by Bergholz amounting to $5,662, and subscriptions by others amounting to $15,100. The president of the road, Mr. Roosevelt, also makes an affidavit, in which he substantially repeats these allegations; and in a statement annexed to his affidavit it is stated that from April 12 to December 29, 1887, for pay roll of engineers and laborers, there was expended $2,581.39; that in 1888, from January 26th to November 1st, inclusive, there was expended $2,674.02; that in 1889, from June 1st to December 30th, there was expended for pay roll of engineers and laborers, etc., bills, office expenses, engineer corps, bills for staking, and legal expenses, $16,367.29; and that in 1890, from April 15th to September 5th, inclusive, there was expended for pay roll of engineers and laborers, revising main line, repairing culverts and ditches, rights of way, office expenses, and engineers, $5,609.45,—making, with the fees for filing papers, a total of $27,516.40. Nothing seems to have been done from 1890 down to the present time. This statement of expenses is, as before stated, quite indefinite. The chief engineer, who advanced a large

portion of the money, is the one who is credited with receiving an indefinite portion of it. Whether or not the money that he advanced was advanced in good faith, and spent for the corporation, or was merely advanced by him with the understanding that it was to be paid back to him upon some account, for services rendered, or as salary as engineer, is not stated. There is a lack of a definite statement of money actually spent in the construction of the road which leaves the matter most indefinite and uncertain. The court below, in the exercise of its discretion, refused to grant a preliminary injunction, thus leaving the plaintiff to establish upon the trial of the action that fact, upon which the continuance of the existence of the corporation depends; and, under the circumstances, we do not think that this discretion was incorrectly exercised. The plaintiff does not pretend that it is at present prepared to build its road, but in the general, indefinite way in which the facts are stated the impression is sought to be made that, if it can obtain an injunction preventing the defendant from building, and adjudicating that the plaintiff has the right to so build, there are persons who will advance the necessary money to begin the construction of the road. No persons are named, however, who have consented to make such advances, and from the statements made it is evident that the question is not at all settled. If the plaintiff had proceeded to the trial of the action, it could before this have had the question of the existence of its road determined, after a cross-examination of the witnesses, in a much more satisfactory manner than it can be determined by affidavits; and that course is still open to the plaintiff. By bringing this case on for trial, it can be definitely ascertained just how much money this plaintiff has spent on this road, and the questions of fact can be established much more satisfactorily than upon affidavit.

Without passing upon the questions as to just what interest a corporation organized to construct a railroad acquires by filing its articles of incorporation, and laying out a route as provided for by the statute, when it discontinues all proceedings under it, it is sufficient to say here that, considering the indefinite statements of the plaintiffs' affidavits, and the great length of time which has elapsed since anything was done under the charter, we think that the court below was quite justified in refusing to grant the preliminary injunction; and for this reason the order appealed from is affirmed, with $10 costs and disbursements. All concur.